Case 14-1062 Gunpowder Riverkeeper Petitioner v. Federal Energy Regulatory Commission Mr. Kristol for the petitioner, Ms. Rylander for the respondent. Mr. Kristol for the petitioner, Ms. Rylander for the respondent. Good morning. Good morning. May it please the Court, Kenneth Kristol on behalf of the appellant Gunpowder Riverkeeper. This is an appeal under the Natural Gas Act and in this appeal we're basically asserting that FERC's November 21, 2013 Certificate of Public Convenience and Necessity was wrongly issued. It was issued not in accordance with the law for two reasons. One, because it is not in compliance with the express language of Section 401 of the Clean Water Act. And secondly, because it violates the hard look requirement under NEPA. On the Clean Water Act issue, Section 401 sets up a process whereby if an applicant like Columbia Gas in this case is going to seek federal approval for an activity that would involve construction that might result in a discharge to a navigable waterway, the state in which that activity is occurring, in this case the state of Maryland, must issue a certification that water quality standards will be complied with. And Section 401 gives the state one year to do that. And if it fails to do it within one year, then the state's right to certify is considered waived. At the end of Section 401A, the statute specifically states that no license or permit shall be granted unless the certification required by this section has been granted or waived. In other words, what Section 401 is saying is state certification first and then federal approval. And what happened in this case is that FERC did it the opposite way. Its November 21, 2013 certification was issued before the state of Maryland had issued its certification. That certification... But it was conditional. It was conditional. That's right. So the question is, what does that language in Section 401 really mean? It doesn't say that the federal government can issue it first and get the state certification later by conditioning it, by saying, you know what, there won't be any construction activity until you've got your certification. It specifies, consistent with the principles of federalism built into the Clean Water Act, it specifies state first, then federal. And they didn't do that. And what is your basis for standing to raise this objection? Standing comes from a couple of different places. Again, this is an appeal under the Natural Gas Act. And one of the things that the Natural Gas Act does is it says an applicant like Columbia, once it gets a certificate, can exercise federal eminent domain power. And that's what's happened in this case. Members of Gunpowder Riverkeeper have had their property condemned in eminent domain proceedings by Columbia as a result of the issuance of that certificate. B&J Oil, this Court's decision in B&J Oil clearly says that condemnation easily satisfies the injury in fact requirement for standing under the Natural Gas Act. Causation, the condemnation is directly a result of Burke's order. That's the basis by which Columbia can go into court and seize the property. Redressability, if this Court rules in favor of Gunpowder Riverkeeper, then the order goes away and that means that the property that was taken by eminent domain was taken improperly. The property owners now have a claim that they can assert because of the improper taking that took place. So we believe we satisfy the three basic requirements. We're clearly within the zone of interest because the Natural Gas Act is giving that eminent domain power and here are people who have been adversely impacted by it because it was being exercised improperly. So your complaint is about a violation of the, of NEPA. What, both NEPA and the Clean Water Act are the reasons. The reason of which is the Natural Gas Act. No, the NEPA claim is different. Maybe I misunderstood you. You said you have standing under the Natural Gas Act because that's what caused the harm. Right. But your objections are not, your arguments are to a violation, not of the Natural Gas Act. Yes. But because, again, the standard of review is, you know, arbitrary and capricious, abusive discretion, or otherwise not in accordance with law. And so our argument is that the FERC's certification was not in accordance with law because it was required under the Clean Water Act to wait until state certification. This is the argument you made for standing with respect to injury, right, that you were injured by the FERC's issuance of the certificate. Yes. What did you say and what do you say with respect to your coming within the zone of interest protected by the statutes under which you're arguing there's a violation, namely NEPA and the CDEP Clean Water Act? Well, it's our position that because our appeal is under the Natural Gas Act, that's what governs. And the fact that these other laws are there, we're not asserting a claim that we have a claim under the Clean Water Act. What we're saying is that FERC's issuance of the certificate was wrong because it failed to comply with these other legal requirements. And so we think we're still within the Natural Gas Act zone. Your standing is constitutional matter. Yes. Is your exposure to eminent domain by virtue of this claim of procedural error? Yes, the failure to follow those requirements. So then the zone of interest is presumably something either coextensive or narrower than the constitutional basis for standing. Yes. I think I would agree with that. But I think the zone of interest is driven by the Natural Gas Act. Are you saying that you come within the zone of interest of the Clean Water Act? No, we're not saying that. Although I think you can make an argument that we can because there is evidence in the record in the standing materials to indicate that there's been recreational interests that are being injured because of this activity. But that's not your argument. No, that's not our argument. Our argument is that it's driven by the Natural Gas Act and we're within that zone of interest. Yes. But you're not claiming a violation of the Natural Gas Act. I guess that's you're relying on B&J, but B&J alleged violation of NGA. And that's not the violation that you allege here. The argument in B&J was that there were decisions that were made in granting the certification, that the substance of the certification decision itself had issues. But the reason why, I think, the reason why standing is found there is still that there is an injury and it's because of what FERC did, right? Ultimately what we're saying is what was FERC doing? FERC was issuing a certificate, but FERC has various legal requirements it has to meet, including 401 and NEPA. And so in the context of doing its Natural Gas Act work, it's got to comply with various laws. And when it didn't do that, the injury then arises out of the Natural Gas Act. Your injury isn't from their failure to comply with those things. If they complied with them in every respect, you would still be claiming your injury is that they jumped the gun on the certificate. Well, if they had complied with other Natural Gas Act requirements? No, no. The Clean Water Act and NEPA. Well, if they complied with the Clean Water Act, then we wouldn't have an argument to say that they jumped the gun because they would have waited until the State of Maryland had certified. So we wouldn't have that argument. And if they complied with all the requirements of NEPA, we wouldn't have that argument. And frankly, I wouldn't be standing here. But our argument is they didn't do those two things. And that's part of the process of making a Natural Gas Act determination. So the statutory provision, we've got a lot of statutes floating around here, I won't try to follow you. The statutory provision sequencing these events is in the Clean Water Act? Correct. Okay. Correct. And they're bound by that and they failed to meet that. And just very briefly, because I see I'm short on time here, very briefly on the NEPA point, this court in Calvert-Cliffs and in Idaho versus ICC clearly said that a federal agency needs to engage in the balancing required by NEPA. That's what a hard look means. You can't delegate it to somebody else. And what they've done is they've delegated the water quality decisions to the State of Maryland and the local authorities because when they basically go through their analysis, they say, you know what, they're going to issue permits, and because of that we find that there aren't going to be water quality issues. That's a delegation that's inappropriate underneath. And that's the reason why we believe that they failed to meet their requirements of a hard look underneath. Thank you. Nothing further. I'll save my time for it. All right. Thank you. Good morning. May it please the Court. Elizabeth Rylander for the Federal Energy Regulatory Commission. I'd like to take a step backward and describe the Commission's process for approving a natural gas pipeline application under the Natural Gas Act. This is a very complex process, as described in our brief, and it occurs in three principal steps. First, the Commission conducts an economic balancing test under the Natural Gas Act to determine whether or not a pipeline application can be approved. This is to confirm that the pipeline is in the public convenience and necessity, i.e., that the public benefits outweigh the public costs. The Commission completed this and described it in its orders. The petitioners here do not challenge the results. Second, the Commission conducts environmental review that includes analysis underneath that. And then third, the Commission ensures that the results of its Natural Gas Act and environmental review processes have been complied with by ensuring that the applicant has reported back to it before it allows construction to begin. At least that's how it was done in this case. Many other agencies have oversight over some aspect of this process, and the Commission's conditional orders respect and take account of the roles of those agencies in the analysis. Well, let me ask you about the way this conditional order works, because I understand that that's sort of standard operating procedure for the Commission. But what Council is complaining about is that Columbia was able to exercise imminent domain, I guess, for right-of-way for this project, and presumably was able to do that at the time when it had only a conditional license. Is that correct? Yes, Your Honor, that's correct. And the reason for that, as I understand it, is that there is some interrelationship between the need for access to private property and the ability of other agencies and Columbia to complete the environmental conditions that are imposed. There must be some means of having access. For example, if there's a stream on private property, there must be some means for the pipeline and for state agencies to examine the stream to evaluate whether there will be impacts on it and thereby complete the Clean Water Act analysis. The complaint, though, isn't that there would be trespasses on the property. It's that it would be condemned. Yes, Your Honor, that's correct. In the Fourth Circuit, and I believe in others as well, there is a jurisdictional string left that is described in the 76 acres memorandum that's attached to the petitioner's brief. And the petitioner of Columbia Pipeline has to pay security to the court so that should there be some reversal of the condemnation process later or some damage to the property that turns out not to be legally authorized, there is some means of redress for the property owners. So, no, it's not a trespass. But the injury that's claimed here is that they were exposed to eminent domain proceedings for condemnation. That's correct. At an earlier time than was lawful. That's correct, Your Honor. And that that would be redressed by vacating the order under review and letting the process be completed in a proper sequence. That's correct, Your Honor. That is the petitioner's argument. But if the court were to remand this case to the commission, there wouldn't necessarily be a reversal of the certificate because the petitioner's alleged environmental harms, the commission would have to then conduct further analysis. This is what happened recently with the court's case in Delaware Riverkeeper Network. The court remanded to the commission for further analysis, but it did not vacate the orders or the certificate. And therefore what? Therefore, I would say that the petitioner's arguments as to what would happen following remand are somewhat off the mark. There would not necessarily have to be a vacater of the certificate, but merely further environmental analysis if the court were to find that the commission's NEPA analysis or Clean Water Act analysis was not correct. Well, if they're correct, the issuance of the certificate on a conditional basis before the state process had been completed. If that's correct, then everything you said would have to occur before another certificate could be issued. Yes, Your Honor, that's true. But there are many, many commission cases in which, in fact, as I think Judge Brown said, it is fairly routine for the commission to issue a certificate prior to completion of the environmental analysis. Has that been vindicated in court? No, Your Honor, not to this date. But this issue has been discussed in cases involving other statutes, such as City of Grapevine, which then involved the Natural Historic Preservation Act, which contains similar provisions for review by other agencies. You know, what seems different about that, though, is in City of Grapevine, the question was when federal financial participation would commence, right? Yes. When federal power would be exercised. And here, because imminent domain seems to go with the conditional certificate, it seems a little different to me. Here again, Your Honor, I think this reflects the difference between the Natural Gas Act and the Clean Water Act. Under the Clean Water Act, the commission, FERC has not authorized anything to occur yet in these orders. FERC has not authorized any disturbance of the environment because it hasn't allowed construction or any discharge into the navigable waters of the United States, which is the protective aim of the Clean Water Act. Similarly, in the Grapevine case, no expenditure of funds was permitted until a review was complete. So all the statutes. I guess all I'm asking, and I understand the argument, I understand what FERC is saying, but here it seems like if you want to look at it that way, that the ability to exercise what is essentially the federal government's, the sovereign's power of imminent domain, right, is coming with that conditional certificate. So something more is happening than was happening in Grapevine, where they were waiting to assess the environmental conditions before that money was available. Again, Your Honor, I would say yes and no. Yes, there has been imminent domain exercise pursuant to the Natural Gas Act, and the Natural Gas Act allows that. But here there has not been disturbance of the environment or discharge into the waters, which is what the Clean Water Act is aiming to, which is what the Clean Water Act regulates. I apologize, Your Honor. So there has been federal action, and there hasn't been at the same time. And to the extent that there has been federal action, it has been limited, and it can be undone. Well, if you're the property owner, it may look a little different. I mean, because people are traipsing all over your property. Yes, Your Honor. To do these environmental analyses. I agree, it may look a little different. Also, just being subject to imminent domain may make it impossible to sell the property or to sell it at the price that would have been available without that. Yes, Your Honor, that's also true. Part of the review here under NEPA is to ensure, and, in fact, part of the Commission's economic analysis is to ensure that damage to property is minimized. And NEPA requires the Commission to consider alternatives, and it did, in fact, consider an alternative pipeline route and the different effects that that would have on different landowners. The petitioners don't raise that here, but that was taken into account. Damage to property and disturbances are not done willy-nilly. Minimizing the damage, if you can, doesn't mean that there isn't damage. No, Your Honor. It doesn't. And the argument is Congress may well have had all this in mind. Yes, Your Honor. Yes, Your Honor, I think so. In this review process, something has to happen first. And in this case, land condemnation may occur first in order that the environmental analyses may be completed. But, again, what the petitioner here argues is – So could I just ask you, under the conditional order, is there a distinction made as to whether the property owner allows the federal agency to come on the property to do the environmental work and the property owner who does not? So eminent domain is only exercised as to the latter and not the former? Eminent domain is only exercised if it's necessary. The pipeline does make efforts to negotiate with landowners and obtain contractually the right to enter the property. And Columbia was able to do that with respect to some property owners, but obviously not with respect to all of them in this case. There's at least one property that had been condemned and purchased, correct? A portion of one property was condemned in the case of Columbia-Gatsby, 0.85 acres. That is not the case petitioners rely on. It was filed after the petition for review in this case, but, yes, it did occur. It's after the petition. It's not in the declarations. But that is inherently permitted by the certificate or the order issued by the commission? Yes, Your Honor, it is. It's not just a right to enter? It is not just a right to enter, no. Land condemnation proceedings may begin under the Natural Gas Act once the conditional certificate is issued. And the possibility of their beginning, as you've acknowledged, can have an immediate effect on the value of the property. Yes, it can. But once again, Your Honor, the commission took great care to reasonably condition this process, this project, in order to ensure that environmental review was carefully carried out and that the role that the Clean Water Act envisions for the State of Maryland could be carried out and to ensure that the commission did take its hard look under NEPA as required. The petitioners here don't argue any particular harm under these environmental statutes. They do not say that there's been any discharge into the water. They do not say, while they say that the commission did not take a hard look, that argument is belied by the commission's very thorough EA, including the pages it devoted specifically to the issues of surface water. If the Court has no further questions. Are you raising that point in connection with their argument that the commission violated NEPA or in connection with your argument that they don't have standing? It's a bit of both, Your Honor. On the merits, I would certainly argue that the commission did not violate NEPA and that it took a hard look at the environmental impacts as NEPA required. How does that bear on standing? In this case, the petitioners have not raised a claim that falls within the protective aims of these two statutes. The petitioners argue damage to property under the Natural Gas Act, but that is not what either the Clean Water Act or NEPA aims to protect. They argue the commission has violated two statutes but caused damage under a third. And for that reason, the commission does argue that they lack statutory standing to pursue this case. Everything you said is accurate, but it omits counsel's point that the compliance with those environmental statutes is by statute a precondition to the issuance of a certificate under the Natural Gas Act. Yes, Your Honor, it is. And for that reason, the commission conditions the issuance of the certificate as authorized in the Natural Gas Act and did not allow any construction activity to begin until it had ensured that all of these environmental conditions had been completed. Are you making that point in order to say there wasn't injury after all? No, Your Honor. Because we've already crossed that bridge. We're down at the zone of interest here. Your Honor, are you asking about constitutional standing? No, no. No, the zone of interest. Why is it you said, look, these are environmental harms. They're not brought about by a violation of the Natural Gas Act. That's correct. But since the Natural Gas Act says you have to take certain steps to avert environmental harms if they claim we're not taken, the issuance of the certificate under the Natural Gas Act would seem based on, but legitimately based on, the violation of Statutes 2 and 3. The commission, the issuance of the conditional certificate was, in part, necessary to ensure that the environmental claims, that the environmental analysis would be done properly here. The record reflects that several other agencies with jurisdiction indicated that they would not begin their reviews until after the commission had completed its environmental analysis. In any case, Are those federal agencies? I'm sorry? Federal agencies or the State of Maryland? I don't believe the record says that, Your Honor. Does it say what you just said, that other agencies wouldn't begin? Yes, Your Honor, it does. That is quoted in our brief, and I have a citation. I'm just looking for it. Here it is, Your Honor. It's at JA 138. Several agencies told Columbia Gas they would not begin their analysis until after the commission had issued its environmental analysis. So in this case, several agencies. It doesn't say state or federal. No, I'm afraid I don't know the answer to that. In a case where there are so many agencies, state, federal, and local, with a piece of the jurisdictional pie, somebody has to be first and somebody has to be last. The statute says FERC goes last. The commission's order speaks to the difficulty of being last in every case, and this Court has said in Dominion v. Summers that the administrative demands of these various requirements can impede the public convenience and necessity. So the commission has, in this case and in other cases like it, reasonably determined that issuing a conditional certificate is an efficient way to allow all of the agencies, including FERC itself, to complete their work. Even that may be true, and it may still create an injury and an injury within the zone of interest protected by these statutes. I would not agree that this creates an injury within the zone of interests of the Clean Water Act or NEPA, at least not in this case, because the petitioners haven't alleged any. They have alleged an injury under the Natural Gas Act. The eminent domain. Yes, correct. Your Honors, I see I'm a bit past my time. If the Court has no further questions. Thank you. Thank you very much. Counsel for petitioner. Other than answering your questions, I just had one point that I wanted to make, which was counsel pointed out this Fourth Circuit process whereby money is put in security and it's available if there is a reversal of the decision. But what the Court said in B&J Oil was the fact that there's compensation at the end of the road in an eminent domain type proceeding doesn't preclude the finding that there's injury in fact. And so that process doesn't remove the fact that there's an injury. Other than that, I think we'll stand on our briefs unless any of you have questions. All right. Thank you. We'll take the case under advisement.
judges: Rogers, Brown, Ginsburg